IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SURGETECH, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES INC., d/b/a Uber,<br><br>Defendant. | C.A. No. 22-882-GBW |

## MEMORANDUM ORDER

Pending before the Court is Defendant Uber Technologies, Inc. /d/b/a Uber's ("Uber" or "Defendant") motion for judgment on the pleadings, D.I. 64. Defendant argues that Plaintiff SurgeTech, LLC's ("SurgeTech" or "Plaintiff") patents are facially invalid under 35 U.S.C. § 101 because each covers patent-ineligible subject matter. The Court considered the parties' submissions, (D.I. 65, 74, 76) and oral argument (Aug. 29, 2023 Hearing Tr.). The Court GRANTS Defendant's Motion for Judgment on the Pleadings for the reasons below.

### I.   BACKGROUND

The three Asserted Patents—U.S. Patent Nos. 11,334,598, 11,360,999, and 11,475,047 (respectively, "the '598 patent," "the '999 patent," and "the '047 patent")—originate from an Australian patent application filed in 2007 and claim the benefit of an Australian provisional application filed in 2006. The Applicants abandoned the original 2007 application and filed a continuation-in-part ("CIP") application in 2015.[1]

---

[1] Each of the Asserted Patents are continuations of that CIP application and thus share the same specification and claim the same general subject matter.

1

The Asserted Patents[2] purport to solve a problem associated with the sale of inventory: "the manner in which such inventory is allocated to various re-sellers, referred to as distribution channels ('Channels')". '999 patent at 1:29-31. The patents explain "that efficient selection of Channels for such inventory can allow vendors to achieve a selling price that corresponds with demand for the inventory in the Channels. In this way, an optimum price for, and supply of, the inventory in each Channel could be achieved with such correct selection." *Id.* at 1:32-37.

The '598 patent includes 24 claims. Claim 1 of the '598 patent is largely representative:

> A computer-implemented method of managing online bookings for transportation services inventory, the computer-implemented method comprising:
>
> linking, via a computerized network, each item in the transportation services inventory with one of a plurality of online distributions channels by allocating the item to the respective online distribution channel;
>
> receiving, from each of the plurality of online distribution channels in real time via the computerized network, sale data pertaining to the online bookings for the items in the transportation services inventory allocated to the respective online distribution channel;
>
> processing the sale data by carrying out calculations to obtain a performance rating for each of the respective online distribution channels;
>
> querying whether the performance rating of each of the respective online distribution channels is greater than a performance rating of other online distribution channels; and
>
> based on the query being answered in the affirmative, carrying out at least one of the following:
>
>> adjusting, via the computerized network, a price of the items in the transportation services inventory allocated to each of the linked online distribution channels; and
>>
>> modifying, via the computerized network, the linkage of the items in the transportation services inventory to the respective online distribution channels by re-allocating the items in the transportation services inventory to or from said each of the online respective distribution channels from or to the other online distribution channels.

---

[2] SurgeTech alleges all claims of all Asserted Patents, which are referred to as the Asserted Claims. *See* D.I. 45.

'598 patent, claim 1.

Independent claims 9, 17, 21, and 23 are directed to the same subject matter as claim 1. Claims 9 and 17 recite the same "linking," "receiving," "processing," "querying," "adjusting," and "modifying" limitations as claim 1, with claim 9 written in the form of a "non-transitory computer-readable storage medium" having instructions that perform the steps of claim 1, and claim 17 written as a "computer server" that includes memory and a processor configured to perform the steps of claim 1. Claims 21 and 23 largely mirror claim 1. The various dependent claims of independent claims 9, 17, 21, and 23 largely mirror claims 2-8.

The '999 patent, similar to the '598 patent, seeks to claim a "computer-implemented method" of managing inventory allocations and is comprised of steps for "receiving sales data," "processing the data" to obtain a "performance rating" for the distribution channel, and using said performance rating to "adjust the price of the inventory items allocated" and/or "re-allocate[] inventory items." '999 patent, claim 1. Exemplary dependent claims include processing the sale data based on supply and demand (claim 5) and processing the sale data based on a ratio of items sold within a predetermined time period in a channel to the number available for sale in that channel (claim 6). Independent claims 9 and 10 include the same steps as claim 1 but are written as a computing device with a "processor configured to" perform the steps (claim 9) and as a "computer-readable storage medium" having instructions to perform the steps (claim 10).

The '047 patent, like the other Asserted Patents, claims a "computer-integrating method of managing online bookings" and is comprised of "establishing" interfaces with channels, "storing" records, "receiving" data, "establishing" various channels and "linking" the channels, "receiving in real time" data, and "determining" a performance indicator that is used to "adjust" for performance. The dependent claims add minor limitations, including limitations found in the '598

3

and '999 patents: processing the sale data based on supply and demand (claims 2, 5, 8, and 11), and linking active channel records to the channel interface without the inactive channel records (claims 3, 6, 9, and 12).

## II. LEGAL STANDARD

### a. Rule 12(c)

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial." FED. R. CIV. P. 12(c). When evaluating a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 617 (D. Del. 2008). *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420. Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

4

### b. 35 U.S.C. § 101

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 inquiries "may be, and frequently [have] been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that there are exceptions to § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted). "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more[] thereby 'transforming' them into a patent-eligible invention. The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 217 (cleaned up).

The Supreme Court's *Alice* decision established a two-step framework for determining patent-eligibility under § 101. In the first step, the court must determine whether the claims at issue are directed to a patent ineligible concept. *Id.* In other words, the court asks whether the claims directed to a law of nature, natural phenomenon, or abstract idea. *Id.* If the answer to that question is "no," then the patent is not invalid for teaching ineligible subject matter under § 101. If the answer to that question is "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is

an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which underlies the second step of *Alice*, "is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## II. DISCUSSION

### a. Step 1: Abstract Idea

"We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." *SAP Am.*, 898 F.3d at 1163 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 591 (2013)). *See also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014). "Nor is it enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103." *Sap Am.*, 898 F.3d at 1163. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 89-90 (2012).

6

The Supreme Court and the Federal Circuit have provided some guideposts as to what constitutes an "abstract idea." For example, claims that recite "'method[s] of organizing human activity' are not patent-eligible because they are abstract ideas." *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. 208 at 220). "[A] process that employs mathematical algorithms to manipulate existing information to generate additional information" is an abstract idea. *Digitech Image Techs. LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014); *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("[C]ollecting information, analyzing it, and displaying certain results of the collection and analysis" is a "familiar class of claims directed to a patent-ineligible concept"). Claims that are "'directed to an improvement to computer functionality'" are not abstract, while claims "'simply adding conventional computer components to well-known business practices'" are abstract. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (quoting *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-38 (Fed. Cir. 2016)). In deciding questions of patent eligibility and, specifically, in navigating the parameters of an abstract idea, it is proper for courts to compare the claims at issue to those previously analyzed in other judicial decisions. *See, e.g., Elec. Power Grp.*, 830 F.3d at 1351-54; *see also Enfish*, 822 F.3d at 1334 (allowing courts to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases").

The Asserted Claims in this case are directed to abstract ideas. The focus of the claims, as purportedly agreed by the parties, is on four steps: (1) allocating inventory to distribution channels, (2) receiving sales data of inventory from various distribution channels, (3) processing the sale data by calculating a performance rating, and (4) utilizing the performance rating to adjust price or re-allocate inventory. *Compare* D.I. 65 at 5, *with* D.I. 74 at 16 (citing '598 patent at 41:17-48).

7

The purpose of the invention, according to SurgeTech, is to solve "the problem [that] exists in the context of e-commerce where inventory needs to be efficiently offered in a complex web of 'distribution channels.'" D.I. 74 at 11 (citing '598 patent at 4:3-6).

The Federal Circuit's decision in *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) is analogous. There, the patent at issue explained that merchandisers "manually" determined prices based on the shape of a demand curve derived from experience, which was "slow to react to changing market conditions" and therefore imperfect. *Id.* at 1360-61. "Accordingly, the [patent taught] a price-optimization method that help[ed] vendors automatically reach better pricing decisions through automatic estimation and measurement of actual demand to select prices." *Id.* at 1361. In its § 101 analysis, the court focused on four "relevant limitations" from the asserted claim: "(1) testing a plurality of prices; (2) gathering statistics generated about how customers reacted to the offers testing the prices; (3) using that data to estimate outcomes (i.e. mapping the demand curve over time for a given product); and (4) automatically selecting and offering a new price based on the estimated outcome." *Id.* In holding the claims ineligible, the court reasoned that "offer-based price optimization" was a "fundamental economic concept[]," no different from any number of prior Federal Circuit and Supreme Court decisions holding similar claims ineligible. *Id.* at 1362 (citing *Alice*, 573 U.S. at 220-21. Re-allocating inventory in response to sales data is similarly a "fundamental economic concept" tied to the principle of supply and demand. Thus, it is similarly an abstract idea. *See also Bilski*, 561 U.S. at 611 (holding that risk hedging is an abstract idea); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (holding that using advertising as an exchange or currency is an abstract idea); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1346 (Fed. Cir. 2013) (holding that

"generating tasks [based on] rules ... to be completed upon the occurrence of an event" is an abstract idea).

Here, the Asserted Patents do not cite to a technological problem, but one of human inefficiency that could be solved by automation. *See* '999 patent at 1:55-61 ("Applicant has found that most independent hotels and accommodation properties lack the resources to have members of staff dedicated to managing allocations to Channels. Applicant has found that it is practically impossible for them to manage this inventory in multiple Channels while still maintaining their business."). Even in SurgeTech's own words: "The invention provides a system that receives and analyzes in real time data from a plurality of available distribution channels and makes dynamic management decisions based on comparing performance ratings/indicators across all channels (for the '598 and '999 patents) or against a threshold (for the '047 patents), thereby eliminating the need for independent monitoring to manage inventory." D.I. 74 at 9.

SurgeTech's citations to *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, 2023 WL 2989049 (D. Del. Apr. 18, 2023) and *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019) are misplaced. In those cases, the inventions were providing technological solutions to technological problems. In *Cirba*, the claims themselves taught "particular ways [or rules] to design virtual environments to optimize the placement of virtual machines on servers" and thus were "directed towards a non-abstract technological improvement." 2023 WL 2989049, at *2. Similarly, in *SRI Int'l*, the asserted claims were "directed to using a specific technique—using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors—to solve a technological problem arising in computer networks: identifying hackers or potential intruders into the network[,]" and thus did not claim an abstract idea. 930 F.3d at 1303. These cases are different from the present case because, in this

9

case, the Asserted Patents seek to cure a problem that is not unique to technology—maintaining data from multiple sources and organizing it in such a way that the user can use that data to capitalize on the current state of supply and demand for their goods and/or services.

This case is also markedly different from *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). In *DRR Holdings*, "[the] '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink." *Id.* at 1257. To solve that problem, the patent claims "recite a specific way to automate the creation of a composite web page by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet." *Id.* Unlike *DDR*, the present case purports to solve a problem that is not inherent to the Internet, but to economics.

SurgeTech argues that the '598 patent specification provides the necessary context to qualify it as a technological problem. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (A court may "view the specification as useful in understanding 'the problem facing the inventor' as well as what the patent describes as the invention."). Specifically, SurgeTech argues that the invention is a system that helps navigate the world of online resellers, and where significant data can "place an undue burden on data processors." *See* '598 patent at 3:63-4:6; *see also id.* at 1:30-46; 39:27-41; Fig. 1.

But SurgeTech misses the point—just because the Internet permits access to a large pool of data channels from which to pull information does not render the issue of organizing and analyzing said information a technological problem. *See, e.g., Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1367 (Fed. Cir. 2023) (claims directed to "general-purpose processors to perform the

10


steps of collecting, transmitting, receiving, and compiling users' answers and matches."); *Mankes v. Fandango, LLC*, 238 F. Supp. 3d 751, 757 (E.D.N.C. 2017) (claims directed to "the abstract idea of allocating, tracking, and controlling inventory"). *See also Elec. Power Grp., LLC*, 830 F.3d at 1355 ("Merely requiring the selection and manipulation of information—to provide a 'humanly comprehensible' amount of information useful for users[]—by itself does not transform the otherwise-abstract processes of information collection and analysis.").

SurgeTech also attempts to rebut Uber's argument that the Asserted Patents go to an abstract idea by claiming that "the need to account for the enormous numbers of available distribution channels and the vast amount of data" is novel to operating in an e-commerce world. D.I. 74 at 7. However, SurgeTech's "arguments are not tethered to the asserted claims." *Trinity Info Media, LLC*, 72 F.4th at 1364. Indeed, the Asserted Claims only require a plurality of online distribution channels. *See* '598 patent, claim 1 (requires linking "each item in the transportation services industry with ***one of a plurality of online distributions channels***[.]" (emphasis added)). Uber contends the Asserted Patents address the dilemma of being overwhelmed by large volumes of information and needing to reorganize and analyze the information, not being limited by technological issues. D.I. 74 at 9-11. In fact, the patent appears to suggest that the problem could be managed by a number of relational databases, including, at least in part, a person using Excel. *See* '999 patent at 15:10-20 ("It will be appreciated by those of ordinary skill in the field that an Excel spreadsheet is effectively a relational database. It is therefore to be appreciated that the following steps described with reference to an Excel spreadsheet can just as well be carried out with any number of relational database applications."). "A process that started with data, added an algorithm, and ended with a new form of data [is] directed to an abstract idea." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (quoting *Digitech*, 758 F.3d at 1344.

Such is the case here—receiving data from multiple distribution channels and incorporating an algorithm to produce a new form of data, the performance rating/indicator, is directed to an abstract idea.

It could also be argued that the inventive concept could be found in the algorithms in the specification, as incorporated by the "means for" claims. Aug. 29, 2023 Hearing Tr. at 43:21-44:22. SurgeTech urged this Court to delay its ruling on the present motion until after claim construction, D.I. 74 at 6-7, in part because the scope of the means-for claims could not "be meaningfully determined." But that argument fails. "Claims that are directed to a non-abstract idea are not rendered abstract simply because they use a mathematical formula." *RecogniCorp*, 855 F.3d at 1328 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)). So even if the means for claims incorporate a structure that provides for an algorithm to process and adjust the data, *see* D.I. 111 at 2 (providing corresponding structures to "means for" terms in the '598 and '047 patent claims), that alone cannot render the claims eligible under *Alice* step one.

Thus, for the reasons above, this Court finds that the Asserted Patents are directed to an abstract idea at *Alice* step one. Therefore, the Court turns to step two.

### b. Alice Step 2: Inventive Concept

The Asserted Claims fail to provide an inventive concept. The Court accepts Uber's description of the Asserted Patents and Claims, noting that SurgeTech fundamentally agrees with the steps claimed. *See supra §II.a.*

When claims like the Asserted Claims are "directed to an abstract idea" and "merely requir[e] generic computer implementation," they "do[ ] not move into section 101 eligibility territory." *buySAFE, Inc.*, 765 F.3d at 1354 (internal quotation marks and citation omitted); *see Capital One Fin.*, 850 F.3d at 1341 (describing a "processor" as a generic computer component); *Mortg.*

12

*Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (discussing the same with respect to an "interface"); *Content Extraction*, 776 F.3d at 1347-48 (discussing the same with respect to "data" and "memory").

In this case, the Asserted Claims recite routine steps carried out by a computer to optimize price and inventory allocation. The claims require allocating inventory to distribution channels, receiving sales data of inventory from various distribution channels, processing the sale data by calculating a performance rating, and utilizing the performance rating to adjust price or re-allocate inventory. '598 patent, claim 1. The actions required by the claims, "allocating," "receiving sales data," "querying," and "processing" all comprise routine steps that amount to portioning and pricing inventory, reacting to sales data that considers supply and demand of the inventory, and/or adjusting price or inventory accordingly. While the '047 patent contains additional steps related to channel limitations, *see* D.I. 74 at 20, they serve only to implement inventory management and information processing associated with channels. *Alice*, 573 U.S. at 224-226.

As Uber argues, there is nothing in the patent to provide an inventive concept as it pertains to calculating a "performance rating." Aug. 29, 2023 Hearing Tr. at 11:24-13:3. The Asserted Claims simply state that a performance indicator ***should*** be determined but does not tell a person of ordinary skill in the art ("POSA") what calculation to perform, how to perform that calculation, or how or when to adjust the performance rating beyond offering simple concepts in the dependent claims, *see, e.g.*, '999 patent, claim 7 ("decreasing price if demand does not exceed supply in a distribution channel or if demand exceeds supply comparing the performance rating to other channels").

In response, SurgeTech does not point the Court to any claims that show an inventive concept, but rather cites to the specification.[3] SurgeTech asserts that the inventive concept is the "performance rating" in the world of online sales. Aug. 29, 2023 Hearing Tr. at 17:13-25. But as noted earlier, the limitation of an abstract idea to a particular field is not enough. *SAP Am.*, 898 F.3d at 1169 ("We have already noted that limitation of the claims to a particular field of information—here, investment information—does not move the claims out of the realm of abstract ideas."). SurgeTech also argues that the performance rating must consider other business considerations such as "commission." Aug. 29, 2023 Hearing Tr. at 29:22-27:18 (citing '598 patent at 5:12-19, 6:44-52, 7:13-17). But nothing in the claims requires a consideration of these factors, and the specification cannot save the claims. "The § 101 inquiry must focus on the language of the Asserted Claims themselves[.]" *ChargePoint, Inc.*, 920 F.3d at 769 (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016)). "The specification cannot be used to import details from the specification if those details are not claimed." *Id.*[4] Thus, the performance indicator provided by the Asserted Patents is merely a vague metric wherein the user would be free to choose their own parameters but primarily implementing the economic principle of supply and demand.

Thus, for the reasons above, this Court finds the Asserted Claims do not contain, individually or in ordered combination, an inventive concept. "There is, in short, nothing

---

[3] When asked if "real time" reporting provides the inventive concept, SurgeTech clarified that the "real time is the problem" and not the solution. Aug. 29, 2023 Hearing Tr. at 24:5-18 ("Because real-time . . . that's the problem, that's the conditions we're operating under[.] These hotel are already dealing with that before the invention comes along; what the invention claims is a way to handle that."); *see also id.* at 30:6-13. Instead, SurgeTech hangs their hat on "allocation of inventory across multiple channels" and "calculation of a performance rating." *Id.* at 30:24-31:14.

14

'inventive' about any claim details, individually or in combination, that are not themselves in the realm of abstract ideas." *SAP Am., Inc*, 898 F.3d at 1170. "In the absence of the required 'inventive concept' in application, the claims here are legally equivalent to claims simply to the asserted advance in the realm of abstract ideas[.]" *Id.* "Under the principles developed in interpreting § 101, patent law does not protect such claims, without more, no matter how groundbreaking the advance." *Id.*

Lastly, SurgeTech contends that "[t]he scope of these [means-plus-function] claims—and arguments that they lack any scope—are relevant to whether claims recite an abstract idea and contain an inventive concept." D.I. 74 at 6. SurgeTech urged the Court to wait until after the joint claim construction brief was filed before ruling on the present motion. *Id.* The parties filed their Amended Joint Claim Construction Brief ("JCCB") on August 15, 2023. D.I. 107. "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101."[5] *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

Nonetheless, this Court has the benefit of the JCCB and *Markman* argument. The Court finds that even if the Court were to adopt the proposed structures for SurgeTech, the Asserted Patents still would not encompass an inventive concept.

---

[5] But even if this Court were to consider claim construction arguments, SurgeTech argues for broader constructions that provide even less scope. *See* D.I. 74 at 6 ("Uber's analogies fail to account for the diverse nature of 'distribution channels' available in e-commerce, which is not limited to 'resellers' (as Uber's proposed construction suggests), but could broadly encompass any "portals, outlets, channels and other distribution agents…configured for the distribution of inventory").

15

For example, there is the means for term: "means for receiving, from each of the plurality of linked online distribution channels in real time via the computerized network, sale data pertaining to the one or more online bookings for one or more of the items in the plurality of items allocated to the corresponding linked online distribution channel." '598 patent, claims 21 and 23. SurgeTech asserts that its function is to "receiv[e], from each of the plurality of linked online distribution channels in real time via the computerized network, sales data pertaining to the one or more online bookings for one or more of the items in the plurality of items allocated to the corresponding linked online distribution channel." D.I. 63 (Joint Claim Construction Chart ("JCCC")) at 7. For the corresponding structure, SurgeTech cites "[a] general-purpose computer without special programming" or, in the alternative, "any of the corresponding structure sufficient to perform the above function" wherein SurgeTech cites to every table and every figure in the '598 patent, as well as large chunks of the specification, and then tacks on "or their equivalents". *Id.* at 7-8.

Turning first to the function, receiving data from a plurality of distribution channels is, as mentioned above, directed to an abstract idea. The structure provided by SurgeTech amounts to a computer that can receive data from multiple channels. "These are generic descriptions of computer components and functions that do not rise to the level of inventive concept." *Hyper Search, LLC v. Facebook, Inc.*, C.A. No. 17-1387-CFC-SRF, 2018 WL 6617143, at *9 (D. Del. Dec. 17, 2018) (citing *Content Extraction*, 776 F.3d at 1347-48).

SurgeTech follows this pattern of providing vague, generic computer functions and the corresponding structure being a structure that can "perform the [] function," namely, a generic computer. *See* JCCC at 7-17. SurgeTech asserts that steps such as "means to receive", "means to analyze", and "means to adjust" provide their inventive concept, but "the[se] means-plus-function

16

limitations in the [Asserted Claims] do not render them patent eligible because the specification describes generic, well-known computer hardware and software components." *Hyper Search*, 2018 WL 6617143, at *9; D.I. 74 at 19-20.

Thus, this Court finds that the Asserted Claims fail to incorporate an inventive concept under *Alice* step two.

### III. CONCLUSION

Uber has shown by clear and convincing evidence that the Asserted Claims of the Asserted Patents are ineligible under 35 U.S.C. § 101 and *Alice*.

\* \* \*

WHEREFORE, at Wilmington this first day of November, 2023, **IT IS HEREBY ORDERED** that Uber's Motion for Judgment on the Pleadings, D.I. 64, as to all claims of the Asserted Patents, is **GRANTED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE